Good morning. May it please the Court, Alyssa Segawa on behalf of the Plaintiffs' Appellants. Could you turn up the volume a little bit? I'm having difficulty hearing you. I'll try to speak louder as well, Your Honor. The doctrine of form nonconvenience was developed to protect defendants from plaintiffs who chose a form that is oppressive and vexatious to the defendants, thereby giving the plaintiffs an unfair advantage. In this case, the doctrine intended to be used as a shield was transformed into a sword by allowing multinational corporate defendants to choose a form that is oppressive and vexatious to the plaintiff. The District Court in this case abused its discretion when it found that Indonesia was a more convenient form than Hawaii to try a case where a Hawaii resident was exposed to asbestos products manufactured and sold by U.S. corporations. In asbestos cases, the principal issue is product identification. Correct. Now, doesn't product identification require the defendant to be in Indonesia where he can or where it can determine whether there's any asbestos other than that produced by the defendant that contaminated through friable asbestos the plaintiff? No, Your Honor. Well, how is the defendant going to find out by compulsory process whether the buildings in which the defendant, which the plaintiff worked, Mr. Hreber worked, had friable asbestos other than manufactured by VWR? The facts of the record as it stands right now, there is no evidence or facts put forth by the defendant that there was any asbestos insulation in the building that Mr. Hreber worked in. And on top of that, the building that he worked in, he stated under oath that that building had been torn down several years before the case was brought. Well, several years before, with the latency period which friable asbestos has to cause mesothelioma, that's not a very good argument. The exposure would have occurred in the 80s, but the building, if they argue that there is asbestos insulation in the building that he worked in, there's no building to test. The building had been torn down years ago. There might be plans, blueprints. I assume that you have to get permits to build buildings in Indonesia, just like everywhere else, and that you have to provide documentation. That kind of thing would be available in Indonesia, not necessarily here. The way that the record is right now, there is no evidence that there are blueprints still in existence from buildings that were built. It would have to be before the 1980s, because that's when he was in Indonesia. There's no evidence that they're kept, those blueprints. Some of us remember a world before 1980s. I see it's long ago, but I… Of course, you could remember a world before then, but the fact that there's documentation… It was shortly after the Civil War. I think I learned that in history. What's the status of discovery? Discovery was not even… There's been none? Well, they did propound discovery on… To your client, the late Mr. Herbert. Deposition was taken, wasn't it? After this case was argued before the district court, correct. There were discovery document production requests done, but not anything of value really has been done yet, because right when they removed the case to federal court, they filed this motion to dismiss. There hasn't been much… How long has discovery been open and available to both parties? From when the case is filed. When was that? Sometime in 2013, I believe. For roughly four years, discovery has been open? Well, the case was dismissed shortly after… In 2013, I believe, is when the district court dismissed this case. Arguably, discovery would not have been able to proceed after the court dismissed the case, because there's no jurisdiction, and we immediately appealed it to this circuit, so there was no discovery done after the court dismissed the case. Under what circumstances was your client's deposition taken? There was a conference before the court argument, and we were trying to schedule the argument as well as the deposition, because we wanted to take it before the argument so that we could put it in the record. So the deposition was taken? It was. Was that in anticipation of him passing away? Yes, Your Honor, because he was diagnosed with mesothelioma, and mesothelioma is an incurable disease. It's an incurable form of cancer. You had me at yes. Now my next question. Did the defendant have a full and fair opportunity to inquire of Mr. Herbert as to witnesses, exhibits, plans, documents, whatever that might exist in Jakarta? Yes, Your Honor, they did. And what did they come up with? There was none. Have they ever identified a single witness or a single exhibit that exists anywhere in Indonesia? No, Your Honor, they have not. Their argument, if you look at their motion in the district court, was not supported by any facts. There wasn't even a declaration or affidavit by counsel that there was documents or evidence located in Indonesia. They just piggybacked on the settling defendant's motion. Correct, but that motion as well had no declaration or affidavit stating that there was documents located in Indonesia. It was purely argument. Okay. Now on top of that, I think what really should concern this court is that for the first time on appeal, VWR admits that it does not have custody or control of Sergeant Welch records. Now the district court granted the motion to dismiss in part because it found that the factor of what evidence was located in Indonesia was pretty even. There would be documents located in the U.S. that we couldn't be brought to Indonesia and documents in Indonesia, maybe, that can't be brought to the U.S. But because the district court believed that VWR had control of the records of Sergeant Welch in the United States, that they could bring it to Indonesia regardless and that this factor mitigated in favor of dismissal. What we learned for the first time on appeal in their answering brief is that is not actually the case. They admit that they do not have custody or control of Sergeant Welch records. So if this case were to proceed in Indonesia, plaintiffs would not be able to try their case because we would not have access to Sergeant Welch corporate records or witnesses. Welch was the provider, if any, of asbestos-related products when Mr. Herbert taught in Indonesia, correct? Correct, Your Honor. And with that, I'm going to save the rest of my time for rebuttal. If it pleases the Court, Alfred Putnam for VWR. I guess maybe to start at that last point, it's true we don't have control over Sergeant Welch's records because we are not, in fact, the successor of Sergeant Welch, which we have been saying for some time but not with evident success, at least with this particular plaintiff. Did you move to dismiss on that basis? No, because, in fact, the history of the case is by the time we were served, there was a forum known convenience motion pending. We were served in that and we said, fine, forum known convenience, and joined in that motion. But, in fact, we're not the successor. The successor is, well, I can give you a little speech if you'd like it. In 1989, we acquired certain assets of Sergeant Welch. But no liabilities? Well, I don't know the no liabilities, not this liability. Not this liability. Not this liability. That was retained by the seller, which is a company called ARTRA, A-R-T-R-A. ARTRA proceeded, rolled in Sergeant Welch's scientific company, the entity, as part of ARTRA. It was a subsidiary of it. Twelve years later, ARTRA filed for bankruptcy in the Northern District of Illinois. Mr. Putnam, would you kindly speak up a little bit? Yes, I'm sorry. It filed for bankruptcy in the Northern District of Illinois, and five years later that bankruptcy was approved by the bankruptcy judge in the Northern District of Illinois. And the bankruptcy, as is often the case, had a requirement that they include a bankruptcy plan that people could file who had asbestos claims could file. And there is such a bankruptcy plan called the ARTRA Asbestos Trust, and that's the successor to Sergeant Welch. We are not. I mean, we use the trade name. We don't deny that we do, but we never acquired it. The case has come up. We get sued from time to time. Let me ask you this. What kind of evidence do you think you could produce in Indonesia to show that asbestos other than VWR has been? Other than the alleged Sergeant Welch, because we didn't. I mean, if the building has been torn down, the building can't be rebuilt. I agree if the building's been torn down, the building's been torn down. There may be records in Indonesia as to what. Well, there may be, but is there any evidence in the record that there are? Well, we don't know of any, no. In other words, it's true that the trial judge's determination here, and I think it's correct, I think it's a proper weighing, was that if there's going to be any showing as to what Mr. Herbert was exposed to, that's where you're going to find it, either from people who were there or from records that were there. Have you defended these kind of claims in other fora? VWR? Yes. Yes, VWR had one that was brought shortly after. Again, you had me at yes. Okay. I have a follow-on question. If this case were tried in Honolulu, how would it be different for your client than it would be if it was tried in New York or Miami or San Francisco? Well, there are two answers to that question, if I may. If, in point of fact, this case, which would be the first case, in which a judge allowed it to go past, allowed a jury to consider whether or not we are a successor, then it would be, this case would be different because this is a specific set of facts and we're trying to prove what Mr. Herbert was exposed to. And in order to prove what Mr. Herbert was exposed to, we have to go find out what's there in Indonesia, who can testify, and try to identify other defendants. Did you have a perfect opportunity to do that when you deposed the man? No, not really. When you have it as best as possible. When you had in front of you, under oath, preserved for the record of this proceeding, the single individual that probably knew the most about the subject matter of the lawsuit, you didn't ask him? Oh, no. First of all, I don't think it's true that we didn't ask him. I think the answers that you get from an asbestos plaintiff, with all due respect, are quite frequently, I say it was, I remember Sergeant Welch. I remember ordering from those catalogs. It's true I've named 26 John Does or whatever they are. In point of fact, I don't remember any of those. I remember this one. Oh, and I remember Fisher, of course, because Fisher was still in the case. And that's what his testimony is. I think that you feel that you have a strong legal and factual argument that your client, BWR, is not responsible as a successor to Sergeant Welch. Yes. As a matter of fact, that was the second part of my answer to your last question, which is if we're assuming this case is going to try, I need to be in Indonesia to try to prove that there were other people that he was exposed to. I don't believe the case will ever try. I don't believe it will try in Indonesia. I believe that they have the same laws you have in Hawaii, which is to say you would respect the successor, the contract that we have. It's governed by Illinois law. Other courts have respected it up until now. We've never gone to a trial on a Sergeant Welch theory. Your position is that any claim against for asbestos-related injury against Sergeant Welch was subsumed in the bankruptcy plan. And there's a place to go. Yeah, ARTRA. That's where you bring those claims. Gotcha. But don't bring it against us. Thank you. Okay. I don't want to take up your time if you don't need to take up the time. But what you're thinking of is that in Indonesia there may be some municipal building permits which show that they gave permits to insulation used in pipes in the building in which he worked, and that insulation had asbestos. Is that the sort of thing you're looking for? Well, I think that's the sort of thing. But I think you're also looking, you go down to the school. The school has a number of buildings. The school has whatever its own records are. They have, in fact, four different schools. If, in fact, the school, because it's not like Mr. Herbert was paying for these products himself, if, in fact, the school has sales records which would show who they bought from and they bought from Sergeant Welch, then they would have a case against ARTRA. But we're dealing here with speculation of what the school records might be. Is there anything in the record which indicates that these records exist? No. We can't be sure they exist. That's fair. And so the proposition is if, in fact, we have to go and prove that there are records and witnesses and name who they are, we're not in a position to do that. Certainly I'm not in a position to do that, and I don't think Fisher was either. But that's, I don't think, the requirement. All we have to do is show the factual basis and that factual. What is the factual basis that there are any records, that there were any bullies, that there was any asbestos? Well, that's where they would be, Your Honor, and the truth of the matter is. . . Can we dispense with the subjunctive? Instead of where they would be, is there anything that shows where they are? Well, there's nothing to show where they are because no one's been to Indonesia to try to find them. You have investigators. Have you gone down there and tried to find out whether the records were there? Can they make declarations that the records are there? We haven't done that, no, and I don't believe the law requires us to do that, although I guess it could if you write an opinion to that effect, but I don't think that's the law. My favorite poet is Ogden Nash. You ever heard of him? Yes. Ogden Nash used to say if we had some ham, we could have some ham and eggs if we had some eggs. All perfectly true, but the fact is that this is a plaintiff who brings a case alleging he was exposed to asbestos in Indonesia. As Your Honor points out, he . . . Let's say there were such records in Indonesia. What difference would it make? What difference would it make what? Whether you're trying the case here in Indonesia. I mean, if they're public records, you don't need a subpoena. You don't need a court order to get public records, right? If they're public records, we probably can get them in Indonesia, yeah. What we can't get here, Indonesia's not a part of the Hague Convention, so we can't go compel anybody to give us records, so that in point of . . . Right, I got that part, but they have to be the kind of records that have to be compelled or a testimony that has to be compelled. Right. I'm trying to figure out, you've talked about public records or school records or things of that sort. You don't necessarily need . . . Oh, I think you'd need it to get the school records. I don't think that they're public records. I think you need to get the school to turn them over if they have them, and that's what you go do, and you go through the Indonesia courts to get them. And presumably, Mr. Herbert would want to go get them too to prove his exposure. He wants to be in a world, or wanted to be in a world, where he could say, I remember it. It turns out no one can bring any paper to show that it was from that catalog. These are catalogs that go back into the early 80s. I remember the catalog, he says. They have a copy of the catalog, but I remember that there were sales. But he doesn't have any proof that there was ever a sale to the schools in Indonesia or, for that matter, in Greece where he was. He agrees that he wasn't exposed to anything in Hawaii, and he wasn't, and he could agree, if he wanted to, that, in fact, he was never exposed to any asbestos-containing product that VWR distributed because he wasn't. So this is a dispute that ought to be resolved, in my view, on a motion, but fine. If it's going to be tried, it ought to be tried in Indonesia. I see I'm at the end of my rope. Thank you. Thank you. I'd like to address his argument that they didn't have the burden to show that there was evidence located in Indonesia. The standard for forum nonconvenience stated by the Supreme Court and this circuit is whether the defendant made a clear showing of fact. As this court has noted, there are no facts in the record that establish that there are blueprints, sales records, witnesses, anything in Indonesia. What Mr. Court was saying is it all happened in Indonesia. If anything happened, it happened in Indonesia. If there are going to be records, witnesses, and the like, that can tell us what actually happened, you have to go there. You can't find the witnesses here or the records here. A couple of things. The exposure wasn't just in Indonesia. He was also exposed in Athens, Greece, to Sergeant Welch products. These products were manufactured in the United States, in Pennsylvania, Sergeant Welch's principal place of business. He didn't develop his disease until he got to Hawaii. It wasn't as though he had the disease in Indonesia and it wasn't diagnosed until 20 years later. No, it did not develop until he was in Hawaii. It's not true that everything happened in Indonesia. On top of that, the one witness that we did find that they claim would be located in Indonesia, a co-worker who taught chemistry with Mr. Herbert in Indonesia, that one category of witness we found in Spain. Their speculation is not supported by any facts in the record. What the standard is is a clear showing of fact. And most of these cases that we've cited in the briefs deal with events that occurred in relatively close proximity to the time when the case is brought. So there is no question that there are documents and witnesses located in these foreign forums. In this case, because of the passage of time and the nature of his exposure and the nature of this international school, there are no facts in the record that support their bare, unsupported speculations that there are documents and witnesses material to this case to be found in Indonesia today. And with that, I will sit down and let the court proceed with its calendar.  Okay, thank you. Cases, arguments, statements.
judges: Kozinski, Hawkins, Bea